Thank you, Judge Tallman, and may it please the Court, I'm Dan Himmelfarb for Mayor Brown, for Appellant Tyrone Freeman. I'd like to reserve four minutes for rebuttal. I will try and help you. Mr. Freeman was convicted on three sets of counts. One count relating to a stipend paid by the Housing Corporation, one set relating to a stipend paid by the California United Healthcare Workers, CUH for short, and one count relating to statements on a loan application. Unless directed elsewhere by the Court, I plan to focus my argument on four of the issues that we've raised on appeal. The sufficiency of the evidence on the Housing Corporation counts, the admission of what the government claimed were draft minutes of a board meeting to prove the CUH counts, the loss calculation under the sentencing guidelines, and the restitution award on the loan application counts. I want to start with the Housing Corporation counts, counts 10 and 11, which charged Mr. Freeman with embezzling money from the Service Employees International Union Local 6434 by requesting that union to pay money to the Housing Corporation without disclosing to the union that the Housing Corporation would then pay the money to Mr. Freeman. The charges are brought under the Labor Embezzlement Statute, Section 501C of Title 29, which makes it a crime to embezzle money with the intent to defraud from a labor organization of which the defendant is an employee. In the Thor Darson case, this court said that the essence of a 501C offense is the taking of property from a labor organization knowing that the labor organization would not have wanted that to be done. The government did not prove, and really didn't even try to prove, that the local didn't want the money at issue to be used for the purpose for which it was ultimately used. As I understand the government's theory, it was that when he sat on the executive board of the SEIU, he was receiving a stipend of roughly $2,500 a month. And at some point, the international decided to discontinue that stipend. So his income was going to be cut. And it looked to me like the government's theory was that by inducing 6434 to, quote, make a donation of $2,500 a month to the Housing Corporation, the government's theory was that the Housing Corporation was just a pass-through and that he basically figured out a way to get his $2,500 back that had been cut from his income. Am I wrong? I think that is a fair statement of at least one of the government's theories. I think it's got a number of them, including that actually the Housing Corporation was a labor organization and that money was embezzled from the Housing Corporation. But does it matter? I mean, as I understand the government's theory, it was essentially money laundering, that the Housing Corporation was just a shell, if you will, through which the money passed. And it was cloaked in a way that looked like it was money that was being supplied by the local to fund the operations of the Housing Corporation when, in fact, it was just a pass-through to Mr. Freeman. Whatever the government's precise theory, it has to prove what this court in Thorndorfsen said is the essence of the crime, which is that Freeman took money from the labor organization. The labor organization here is the local union, knowing that the local would not have wanted that to be done. All of the evidence in this case is that the local wanted the money to go to the Housing Corporation, and there's no evidence that the local cared one way or another what the Housing Corporation ultimately did with it, much less that they didn't want to give it to Freeman. I thought there was testimony that nobody on the board of the local knew other than the president, who essentially was ordered by Freeman to sign the necessary documentation in order to make that happen. It had never been presented to the board to obtain a resolution authorizing it. But as far as the board knew, they were just supplying $2,500 to help this Housing Corporation because it had no other source of money when they started doing it. Well, the evidence you just described is actually evidence relating to the Housing Corporation. I think you're talking about the president of the Housing Corporation, Derek Smith. And I think this is really a telling point as far as our submission is concerned. Virtually all of the government's evidence on this point, and virtually all of the evidence on which the government relies in this court in defense of the convictions on these counts, has to do with the Housing Corporation and with Freeman's relationship with the Housing Corporation. There's little, if any, evidence as to what the local wanted. But because we're talking about embezzlement from a labor organization Is it your idea, Mr. Himmelfarb, that after the SIU executive board of the International said, we're going to cut off $2,500 to the defendant? The defendant used his position in the local to say, well, how about you guys paying me the $2,500 that the executive board doesn't want me to get? And the local said, fine, we're going to do it. We're going to thumb our nose up at the International. Well, it's something like that. I mean, to be more precise about it, our position is that what the local did, and what the local was perfectly fine doing as far as the trial record is concerned, was to decide to give this money that once went to Freeman but now went to it, the local, to the Housing Corporation. Why didn't they give it directly to him if it was just above board? Why did they have to go through the subterfuge of going to the Housing Corporation? Well, I obviously don't agree with your use of subterfuge. I think that's really the issue in the case, whether it was a subterfuge or not. What's the business purpose, if we want to use a tax term? What's the business purpose of giving it to the Housing Corporation if they can give it to the defense straight out? Right. The purpose is that the local had a history of supporting the Housing Corporation and wanted to continue it. They had a history of supporting Mr. Freeman at $130,000 a year. That's true. Why not give him $2,500 more? Well, the Housing Corporation is an independent organization that did its own thing. Why didn't, if this was all above board and the local could do what they pleased and thumb their nose at the International Executive Board, which they can do, why didn't they just give him $2,500? Why go through the Housing Corporation? Well, I don't think it's a matter of thumbing the nose. I don't think that the International Board affirmatively didn't want the money to go to Freeman. It said $2,416.66 is not going to be paid to you anymore. Right. It's going to be paid to someone else, and that someone else can decide what to do with it. And I don't think the International cared one way or another. Why is it saying it's going to be paid to someone else? It's going to stay in the coffers of the union. Right. And then the union gets to decide what to do with it. It's the union's money. Right. And as far as your question is concerned as to why the local wasn't paying Freeman directly, I don't think the trial record speaks to that. But it's our position that it was the government's obligation, which had the burden of proving the evidence of the crime beyond a reasonable doubt, that the local didn't want it to go to Freeman. And there's just no evidence on that point. There was no representative of the local who testified as to what the local wanted this to be done with this money. And there was certainly no one who testified that the local didn't want it to go to Freeman. Mr. Himelfarb, how do you explain the significance of what I'll call the audit evidence, that when the SEIU announced that they were going to look at the books and records of Local 64 or 34, your client allegedly talked to Mr. Smith about papering the arrangement, and he asked him to backdate a, quote, unquote, replacement contract, which Mr. Smith testified was not truly a replacement because it contained terms that were not included in the original. I mean, what I say about that is what I said about the evidence you identified in your earlier question, which is that all of that bears upon the housing corporation's desire. No. As I understand, and maybe I misread the briefing here, but as I understand the record, Mr. Freeman learned in the summer of, what was it, 2008, that the international was sending out auditors or somebody to review the books and records, which would have included both the local and the housing corporation. And in advance of the arrival of the auditors, he orchestrated the papering of the local and the housing corporation's books and records to make it appear that this was a legitimate consulting arrangement. No, I don't think so. Was it not what the jury was presented with? No, I think all of the evidence bears upon what was going on at the housing corporation. And again, this gets to our fundamental point, which is that the crime that the government really seems to be defending on appeal is the crime of embezzlement of money from the housing corporation. But there is no such crime. Well, I'm not so sure. It wasn't charged. I guess I'm not so sure that I view the evidence that narrowly. Getting back to Judge Bea's question, what was the legitimate purpose of doing it this way? Why would he need to insert those kinds of documents in the books and records of the entity if it was truly a legitimate arrangement? Well, the question of whether there is embezzlement with an intent to defraud, as I've said, ultimately reduces to the question whether the supposed victim of the crime would have wanted it to be done or not. But you and I both know from having done these cases for most of our career that a badger indicia of fraud is post-conduct behavior, which is designed to throw auditors off the track. And why isn't it permissible for a reasonable fact finder to look at what Mr. Freeman did and say, if this was an above-board deal, why did he have to do this in order to hide it from the auditors? I guess my ultimate point on this is that what intent to defraud means in the context of an embezzlement statute like this one, as this Court said in Thordarson, is that the money was taken by the defendant knowing that the union wouldn't have wanted it to be done. Doesn't that go to his intent? It does. Of course it does. But it's just one aspect of it. And whatever can be shown about what was in Mr. Freeman's mind, there still has to be a showing to show that he knew that the union wouldn't have wanted it to be done, that, in fact, the union wouldn't have wanted it to have been done. And there was not, as I've said, there's not a single witness from the local who testified what the union's desires were as far as this money was concerned. Other than that, it go to the housing corporation. So is it a problem of direct versus circumstantial proof? Is that what you're arguing on your sufficiency charge? I guess. I'm not sure whether it's a distinction between direct and circumstantial. What I'm saying is that what an intent to defraud, what embezzlement with an intent to defraud requires proof of, whether it's direct or circumstantial, is that the labor organization didn't want the thing that happened to the money to happen to it. And I think in answer to my earlier questions, your position has to be that what I'll call the auditor evidence is insufficient as a matter of law to permit the jury to infer intent to defraud the local. That's absolutely right. It's insufficient because, as I've said, I think it bears only on the housing corporation's desires and not the local. Did the jury instruction on this count require the jury to find the intent to defraud was to the local? Yes. It did? Yes, I believe so. I thought it just said intent to defraud. Do you have that language? I don't. I don't have it at my fingertips. My understanding is the charge in the indictment, counts 10 and 11, clearly identified the local as the victim. I'm pretty confident that the jury was instructed that that was the nature of the charge. And then the elements were described in pretty general terms. So if you pair the general description of the elements with the description of the charge, I think it necessarily follows that the jury was instructed that the victim of the crime, the embezzlement, had to be from the local. Let me turn, if I could, to the coup counts. And what I want to focus on is the admission of what the government claims are draft minutes. They were admitted as a business record under an exception to the hearsay rule, 803-6. 803-6 has five separate requirements as preconditions for admission. It's our position that no fewer than three of them were not satisfied. The first one, that there be evidence that the document was prepared by someone with knowledge of them at or near the time, we think really can be the beginning and the end of the analysis. Because the government doesn't take issue with that. I thought the testimony was that it was prepared from a recording, and that there was testimony from someone at the meeting who authenticated them as accurate. I think there was testimony that it may have been prepared from a recording. But, of course, the recording wasn't before the jury. What was before the jury— I understand. But the question, is it not—I mean, it seems to me— your objection went to the weight, not to the admissibility. And both sides introduced minutes evidence. The only difference here is that this particular exhibit was a draft and had not yet been finally approved because there never was another board meeting after the June meeting when these draft minutes were prepared. Right, and we think that's a critical difference. The fact that it was draft and not approved? Yes, absolutely. The approval of the minutes by the board shows that these accurately reflect what happened. They are trustworthy. But doesn't that go to the weight, not the admissibility? It doesn't go to the weight because you have, as preconditions for admission under 8036, these five separate requirements. It would be one thing to say there was some evidence as to each of these five, and I, the district judge, in my capacity as gatekeeper in deciding whether evidence can come in, find that there's, you know, prima facie evidence as to each, and to the extent that you have any issue with this, Mr. Freeman, you can argue to the jury that this goes to weight. But that doesn't mean that you can simply ignore three of the five or even one of the five requirements and offer no evidence at all and say, well, that's fine, we'll just let the jury decide this goes to weight. Isn't there a catch-all provision under 803 that evidence may be admitted if the district court finds that it's otherwise authentic and reliable? There is. It wasn't offered under that provision. Nobody, it's not, its admission is not defended by the government on that ground, so I think it has to stand or fall. But the court did hear testimony, did it not, from clerical staff who normally prepared the minutes? Well, the two pieces of evidence that the district court relied upon and that the government relies upon are testimony from an essentially clerical person, Miss Fowlin, who said she was involved in sending the draft minutes around to the board before the next board meeting for approval, and she speculated that this one was different from the other ones because it was made from a recording. But she still said that the regular practice was to prepare the minutes within a month because that's when the next meeting would be, and she thought this would have been the same, right? Why is that not evidence that this was prepared close to the time of the meeting? Because there's no evidence as to, even if you accept the idea that this was made from a recording, there is no evidence as to what happened in connection with the making of this document from the recording. In other words, is it a verbatim transcript or is it something else? There's no evidence as to what happened after it was prepared. Was it edited? There was evidence that the minutes that were ultimately approved by the board were, in fact, edited. These were purportedly minutes of a 2008 meeting offered at trial many years later. There's just no way of knowing. But applying our standard in Hinkson, I mean, those arguments sound to me are weight arguments, that the jury should discount the reliability of the content of the exhibit, not that it's inadmissible under Hinkson. Right. I mean, if you have a different kind of situation where there's a question of admission of evidence, for example, expert evidence under the 701 series of rules, you can certainly have a situation where there has to be some threshold showing me that the expert is reliable and so on. And certainly a judge could say, over objection, I'm going to allow this expert to testify. And you can argue to the jury that he's not as reliable as the proponent of the evidence says. But that, to us, is a completely different situation than one like this, where you've got evidence that is presumptively inadmissible, it's presumptively hearsay. The rules say, in order for that presumption to be overcome, you have to satisfy these five conditions, framed in the conjunctive, not the disjunctive. And there is simply no evidence as to one. We would say there's insufficient evidence as to three. But at a minimum, there's insufficient evidence as to one. You're under two minutes. Do you want to reserve some time or do you want to keep going? Let me reserve my time. Okay.  Very well. Let's hear from the government. Ms. O'Connor. May it please the Court, good morning. Cheryl O'Connor on behalf of the United States. I want to start where the defense started, with the long-term care housing corporation counts. And I want to take a step back and look at the overall scheme that was involved here, which I believe Judge Tallman fairly accurately described. Here was a defendant who was receiving approximately $2,500 a month in an international stipend, who on the eve of ceasing to receive that money, introduces to the local a resolution to give the money to the housing corporation. He doesn't reveal to the local at the time that he plans to get the money from the housing corporation himself. The local has no reason to believe that he's going to get the money from the housing corporation because he's been working for the housing corporation without additional compensation up to this point. The next thing that the defendant does is he plots, even though he has no official position at the housing corporation. Mr. O'Connor, you say that the local had no idea that Mr. Freeman was going to get the money from the housing corporation? That's correct. Wasn't Mr. Freeman the president of the local? Mr. Freeman was the president of the local. Doesn't that give some knowledge to the local as to where the money is going? Well, certainly not to, no, in the sense that the local, the board has to adopt the resolution. And so simply- So who voted on the resolution and how was it adopted? The resolution was provided, presented by the defendant to the board members at their meeting. And the language of the resolution very clearly states that the money is no longer going to be going to the defendant. It's going to be going to the union and that what the union intends for it to be done- So because of his adverse interests, there was no vicarious transmission of knowledge to the union. That's correct, Your Honor. He simply didn't disclose at the time he presented the resolution what the true purpose of the resolution- Of the resolution was. That's correct. He then plucked a person who was employed by the union in the IT department and somehow installed this person, Derek Smith, as the president of the local and then presented that person with the so-called consulting contract to sign. So the timing and the circumstances of Smith's appointment, the timing and the circumstances of the defendants urging the local to pass the resolution, all evidence that the defendant was aware that the local wanted the money to go to the housing corporation and not to the defendant himself. And certainly under the standard of review here, it was redrawing all inferences in favor of the government. A rational jury could have inferred from these facts that the defendant had the intent to defraud the union of the purpose of these monies. But where is the evidence to take Mr. Hemelfarb's position? Where is the affirmative evidence that the union didn't want Freeman to get the $2,416.66? Well, it's in a few places, Your Honor. It's the plain language of the resolution directs that the union wants the housing corporation to get the money. There's also the inference that the jury was entitled to draw from the fact that the defendant could have asked the union to pay him the money back directly but didn't, which indicates a consciousness that the union wouldn't have approved that because what the union wanted to do with the money was have it go to the housing corporation, not go into the defendant's pocket. Is it part of your theory that Smith was in on the fraud, that he was helping, intentionally helping this fraud? That's not the government's theory, and I can't speak to whether that's the case or not. But certainly Smith was someone who the defendant was able to direct and control, and Smith was not someone who was going to stand up to the defendant and say, hold on a minute, I'm going to look after the housing corporation's interests and make sure you don't get this money. And that's evidenced by the fact that not only is Smith appointed by the defendant, despite the defendant's lack of any real position on the housing corporation, but the fact that when the defendant presents Mr. Smith with the backdated second version of the consulting contract that erroneously lists Smith as in a different position at the time that he supposedly signed this contract, Smith objects to it and the defendant just says, don't worry about it, just sign the contract, and Smith signs it. So it's somewhat irrelevant whether he's in on the fraud or not, but he's certainly not someone who's going to stand up to the defendant and remains under the defendant's control. The government advances two theories as to why this money was in fact the union's money. The government is not arguing that the long-term care housing corporation itself was a union. The government is arguing that as in Vitale, what the defendant did here was obtain the union's money, not directly from their pocket, but indirectly through another organization. And certainly the cases that the government has cited in our brief support that that's a rational basis. If the court has no further questions regarding the long-term care housing corporation, I would like to address the minutes issue that the defense has raised. Okay. With respect to the minutes, the only real issue here is the fact that they were not adopted by the board, and they were not adopted by the board because there was never any subsequent meeting. But the testimony of Fallon and Doug Moore establishes that the district court did not abuse its discretion in admitting these minutes. The testimony establishes that they were made at the time of the events. They came from a recording of the events. How do we know they were made at the time of the events? So as I understand the testimony, we know that usually they were made before the next meeting. But here there was no next meeting. So if the person who usually made the minutes waited until the last minute because they waited until the next meeting and there was no next meeting, how do we know when these minutes were made? Well, we know that the recording of the events from which they were transcribed obviously had to take place at the time of the meeting. And so I think the distinction is not particularly significant with respect to whether these minutes were transcribed immediately preceding or, excuse me, immediately following the actual meeting or sometime within the next month like the others were. So is your position really the timing doesn't matter at all because there was a recording? It doesn't even matter if it was within a month? Well, if the other minutes were sufficient and they were made within a month, then the fact that these minutes must have been made during that time period that the union was so operative before the next meeting seems to indicate that this transcription was made at the time. Isn't the answer to Judge Freeland's question yes, it doesn't matter? Yes, Your Honor. I'm sorry. That was a long way of trying to say that. So basically you had a witness who was at the meeting who looked at it and said this accurately depicts what transpired at the meeting. I was there. That's correct. And I attest to that. And then you had the testimony of this clerical person who actually circulated draft minutes to board members on prior occasions which were later adopted as fully approved minutes. That's correct. And the question is whether or not the district court abused its discretion under the rules of evidence in admitting the draft as opposed to, well, there are no formally adopted versions here. That's correct. There's no formally adopted version here, which is what distinguishes this from the Lloyd case that the defense cites. But here it's Mr. Moore's testimony that Judge Tallman referred to that corroborates that these are an accurate representation of what occurred. Was the recording available at trial? No, Your Honor. The recording wasn't available. And it's my understanding that no one knows what happened to the recording. So there was no opportunity to compare the recording itself. But the question is, the question is how could some — there couldn't have been an inaccuracy in these minutes because not only were they taken from a recording, they appear to be a transcription. The minutes reflect chronologically what the witness states chronologically occurred. They reflect the substance of what the witness states chronologically occurred. And so for that reason, the district court did not abuse its discretion. If the court would like me to address the cue counts, I'm happy to do so. This time if the court doesn't have any questions. I don't think I have any other questions. Colleagues? Okay. I actually do have one question. Could you respond to this argument about whether the intent needed to be to a particular entity and what the jury instructions said about that? Oh, yes, Your Honor. And I flagged the jury instructions. Excuse me. The particular jury instruction at issue can be found on GER 918 to 919. And I think the defense characterization was correct. Although the particular element of intent to defraud as listed in the jury instructions doesn't specify who had to be defrauded. The jury instructions are clear that the victim of this entity is the local and that the money had to belong to the local. And thus it's a reasonable reading of that, that the intent to defraud had to be on the local. So you're conceding that the intent needed to be to the local. It couldn't just be a general intent to defraud? No, I'm not conceding that. But in a broader sense, the entity that's being defrauded is the local. Even though the elements simply are stated as a general intent to defraud. I don't think it's particularly that significant of an issue with respect to the fact of this case. And if I could just reiterate, the evidence of the intent to defraud here was sufficient. He didn't disclose to the union that the payments were going to go to himself. He didn't ask the local to pay himself directly. He referred to the fact that he was getting a salary reduction. All the while he controlled the entity that he persuaded the union to donate the funds to. As well as the facts that I mentioned earlier regarding the timing and circumstances of him appointing Mr. Smith as the president and the controller. As well as his history of working without compensation. And as well as his conduct regarding the audit. The fact that he approved the payments to himself without any supporting documentation. Until all of a sudden, here we are on the eve of the audit. And suddenly the defendant is turning in multiple timesheets to support these consulting payments to himself. And backdating a different version of the original consulting contract. So even though many of those actions took place with respect to the Long Term Care Housing Corporation. It was fair for the jury. It was certainly rational for the jury to infer from this whole course of conduct. That the reason the defendant behaved towards the local in the way that he did. Was that he intended to defraud the local all along as well. So is the theory essentially, even though it's a 501c violation. It's akin to a wire or mail fraud scheme? In other words, we're looking at what was the scheme to defraud here. But the jury still had to find that the victim of the fraud was the local. That's correct, your honor. And that the housing corporation was the third party entity through which the scheme to defraud was effectuated. And that's one of the government's theories. Is that the housing corporation, the money simply moved. He obtained the money indirectly by moving it through the housing corporation. Could we find that the money came from the local but the intent was as to the housing corporation? Would that be enough? I think that would be enough, your honor. But I would urge the court not to find that. I think that the evidence supports an intent to defraud both entities here. So if the court feels that it needs to reach that issue, I think that the evidence certainly is sufficient for the jury to have drawn that inference. But if the intent was to defraud the corporation, how would that be union money? The question is when does title pass, I guess? Does it ever pass when it's stolen? Well, that's the question. If the intent was to defraud all along and it wasn't disclosed, would that result in a passage of title, so to speak, from the local to the housing corporation when it was never intended that the money was going to stay at the housing corporation? And I don't believe that it would, and that's the government's indirect routing theory. But the government's alternate theory was also that because the Long-Term Care Housing Corporation was essentially an arm of the union, that the union funded the Long-Term Care Housing Corporation, the union's officers ran the Long-Term Care Housing Corporation, Freeman, the union's president, despite not having a role on the Long-Term Care Housing Corporation's board, managed and controlled the housing corporation, that essentially the money that was given to the Long-Term Care Housing Corporation retained its character as union money. Thank you, Your Honor. Nothing that my friend Ms. O'Connor just said establishes that the government proved what it had to prove to convict Mr. Freeman of 501C offenses on Counts 1011. Nothing she said shows that the local wanted to place any restrictions or cared one way or another about what the housing corporation did with the money after the local gave it to the housing corporation. Ms. O'Connor relied on what she said was the plain language of the local resolution. The plain language of the local resolution is that we want to give this money to the housing corporation. It says nothing one way or another about whether it cared one way or another what the housing corporation did with the money or placed any restrictions on it. Ultimately, the government's theory of embezzlement as to the local, and as I've said, I think its real theory is that there was embezzlement from the housing corporation, which might be a crime in some world, but it's not a crime in the world of this case. What about, I was teasing out with Ms. O'Connor this notion of title passing. What if the theory that the government offers is true, that there was never any intent to give the money to the housing corporation, it was simply to use the housing corporation as a pass-through so that he could replace the $2,500 that was cut from his salary by the international? I mean, I don't think there is any evidence of that. But again, this gets back to a point that you and I were discussing earlier, which is at most it bears on a specific aspect of fraudulent intent, which was what was in Mr. Freeman's mind. The government also has to prove that the local didn't want that to be done. So even if you think Mr. Freeman was trying to trick an entity to part with money, if in fact it turned out that the entity was perfectly happy to part with it in exactly the way that it ended up being parted with, that may be some kind of crime, but it's not embezzlement from a labor organization. But there wasn't any evidence that anybody at the board level knew that the money was going to Mr. Freeman, correct? Right. I think ultimately, as I was about to say before, that is the government's theory of embezzlement as to the local, which is that Mr. Freeman didn't disclose to the local that after this money was given by the local to the housing corporation, he would then cause it to be given to him. That is at most a theory of breach of fiduciary duty. 501A speaks to breaches of fiduciary duties. 501B makes clear that those types of violations are civilly punishable but not criminally. Thor Darson itself draws this very distinction between breaches of fiduciary duty based, for example, on a nondisclosure and what people traditionally recognize as embezzlement. So to us, that's really a separate reason why these 501C counts just don't work, quite apart from the fact that the government didn't prove that the local didn't want the money to end up in Mr. Freeman's hands. Well, that goes back to the discussion we were having on the significance of some of the evidence establishing intent to defraud. The question is whether there was enough in this record from which the jury could find that the whole purpose was to hide this scheme from others, board members of the local, and reimburse him for money that he wasn't getting anymore. Right, and what I would say about that is whatever else that may or may not prove, it doesn't prove that the local didn't want the money to go to Mr. Freeman ultimately. Okay. I think we have your arguments in mind. Thank you very much, Mr. Himmelfarb. Thank you. It's always nice to see you in court. Ms. O'Connor, the case just argued is submitted. We'll get you a decision as soon as we can, and we'll be adjourned for the day.
judges: Tallman, Bea, Owens, Friedland